**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SUSAN L. STEWART, ) | CASE NO. 1:09cv2761 |
| ) | |
| Plaintiff, ) | JUDGE KATHLEEN M. O'MALLEY |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | REPORT & RECOMMENDATION |

Plaintiff, Susan L. Stewart, ("Stewart"), *pro se*, challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Stewart's claim for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381, *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Court recommends that the final decision of the Commissioner be affirmed.

**I. Procedural History**

On May 13, 2004, Stewart filed an application for SSI, and on June 23, 2004, she filed for POD and DIB. In the applications, she alleged a disability onset date of May 15, 2002, and claimed that she was disabled due to fibromyalgia, seronegative arthropathy, and hypothyroidism. (Tr. 506-507.)  Her applications were denied both initially and upon reconsideration. Stewart timely requested an administrative hearing.

On July 9, 2007, an Administrative Law Judge ("ALJ") held a hearing during which

Stewart, represented by counsel, testified. Kevin Zhuang Yi, a vocational expert ("VE"), also testified. On August 28, 2007, the ALJ found Stewart was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age 35 at the time of her administrative hearing, Stewart is a "younger" individual under social security regulations. *See* 20 C.F.R. §§ 404.1563, 416.963 (Tr. 31.) Stewart attended high school through the tenth grade and later obtained her GED. (Tr. 522-523.) She has no past relevant work. (Tr. 31.)

*Hearing Testimony*

At the hearing, Stewart testified to the following:

- She is unable to perform work-related activities due to physical pain, stiffness, fatigue, and mental anxiety. (Tr. 525.) Further, she experiences panic attacks for no apparent reason. (Tr. 526.)

- She lives with her husband and two children. (Tr. 527.)

- She does grocery shopping with her husband, although he does the lifting. (Tr. 527-528.) She is able to drive to pick up her teenage son from football practice, which is about ten miles from home, but otherwise when she drives, she takes someone with her. *Id.*

- She is able to cook light meals for her family that are easy to make. (Tr. 528.)

- As far as cleaning, her husband does the vacuuming, the yard work, carries the groceries, and putting away the dishes that require overhead reaching. (Tr. 528.) She is able to wash the dishes for a short period of time and place them in the dish drainer. *Id.*

- She is not able to work eight hours a day, five days a week, as she needs a nap during the day. *Id.* For a short time, she took medication for panic attacks, but it made her even more tired. (Tr. 529.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments,

2

that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Stewart was insured on her alleged disability onset date, May 15, 2002, and remained insured through September 30, 2005. (Tr. 21.) Therefore, in order to be entitled to POD and DIB, Stewart must establish a continuous twelve month period of disability commencing between May 15, 2002, and September 30, 2005. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Stewart established medically determinable, severe impairments, due to somatoform, panic and personality disorders, fibromyalgia, obesity, and hypothyroidism; however, her impairments, either singularly or in combination, did not meet or equal one listed

---

[1]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Stewart was found to have no past relevant work. She was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Stewart is not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## VI. Analysis

Stewart's Brief on the Merits, submitted *pro se*, does not set forth clearly recognizable

assignments of error.[2]  However, it is well settled "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief."  *Id*.  As such, the Court construes Stewart's brief as raising the following assignments of error: (1) the ALJ failed to give the proper weight to a treating physician's opinion; (2) the ALJ failed to consider substantial medical evidence in the record; (3) the ALJ failed to properly weigh Stewart's credibility; (4) the ALJ improperly found she could perform sedentary work; (5) the ALJ did not properly consider whether Stewart's impairments met or equaled a Listing; and (6) the ALJ failed to reconcile the Global Assessment of Functioning ("GAF") findings of Eshwar Gumidyala, M.D. and Frederick Leidal, Psy.D.

**Treating Physician - Dr. Esterle**

Stewart contends the ALJ failed to give proper weight to an assessment conducted in December 2006 by Lisa Esterle, D.O., a treating physician.  The Commissioner responds that the ALJ addressed Dr. Esterle's report, noting that it ran counter to the overwhelming weight of medical evidence.  The Commissioner also argues that the report appears to be based on Stewart's subjective complaints.  (Doc. No. 14 at 17.)

Under Social Security regulations, the opinion of a treating physician is entitled to

---

[2]In Stewart's brief, she requested an additional thirty days to amend the complaint and to supplement the record.  (Doc. No. 13 at 1.)  She, however, did not state how she wanted to amend the complaint and submitted no further information.  Pursuant to Federal Rule of Civil Procedure 15(a), the Court may allow a party to amend its pleading "when justice so requires."  Fed.R.Civ.P. 15(a).  The Court, however, may exercise discretion and deny a motion to amend for several reasons including "undue delay ... [or] futility of amendment."  *Pedreira v. Kentucky Baptist Home for Children, Inc*., 579 F.3d 722, 729 (6th Cir. 2009) (*quoting Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007)).  As Stewart's request was not properly made under Fed.R.Civ. P. 15(a), and the complaint itself has no meaningful impact upon the administrative review conducted herein, the Court denies the request.  If Stewart wanted to make new arguments, she could have done so in a reply brief.

controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1),

---

[3]Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Furthermore, in *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007), the Sixth Circuit noted that a physician will qualify as a treating source if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." In *Smith*, a doctor was not deserving of treating source review when the doctor examined the claimant only once and wrote a single "physical capacity evaluation." *Id*.

In December 2006, Lisa Esterle, D.O., completed an assessment of Stewart's physical RFC.[4] (Tr. 435-436.) Dr. Esterle found that Stewart could: (1) lift and/or carry up to five pounds occasionally; (2) lift and/or carry up to five pounds frequently; (3) stand and/or walk for about four hours in an eight-hour workday; and (4) sit for about one to two hours in and eight-hour workday. (Tr. 435.) Dr. Esterle noted that Stewart did not need an ambulatory device. (Tr. 436.) She further noted that Stewart's pain was considered "moderate." *Id*. The record reflects that Stewart had one subsequent appointment with Dr. Esterle on January 4, 2007. (Tr. 484-485.)

The ALJ considered Dr. Esterle's assessment and concluded that it was not supported by the evidence of record:

> As for the opinion evidence, the inference by Dr. Esterle that Ms. Stewart is unable to work for 8 hours daily, in addition to several restrictions noted on the medical source statement, is not supported by the evidence of record or by other treating and examining physicians. Therefore, I give Dr. Esterle's opinion

---

[4]The ALJ notes that Stewart began treating with Dr. Esterle in September 2006, but the Court did not find any other treatment records regarding Dr. Esterle.

7

> minimal weight. The evidence shows that Dr. Esterle based her opinion on Ms. Stewart's statements regarding her level of pain rather than objective evidence through physical examination and diagnostic testing which were performed extensively throughout the record. Limiting Ms. Stewart to sedentary work activity that does not require standing for long periods or performing more than occasional postural activities takes into account her pain related to fibromyalgia. Ms. Stewart drives, cares for children who require constant attention and participates in household chores. She sat through numerous examinations and there was never an indication that she had difficulty sitting for long periods. Therefore, I cannot fully accept limitations and restrictions set forth by Dr. Esterle. Although Dr. Esterle is a treating physician, documentation by other treating and examining physician's does not support the extreme limitations set forth by Dr. Esterle.

(Tr. 29-30.)

The ALJ provided an accurate and thorough discussion of Dr. Esterle's findings and properly discounted them.

**Sedentary Work**

Stewart argues that the ALJ improperly found she could perform sedentary work. (Doc. No. 13 at 5.) The Commissioner responds that the ALJ's RFC finding accords with the assessments proffered by two different state agency reviewing physicians. (Doc. No. 14 at 16.)

Pursuant to SSR 96-6p[5], the ALJ is required to consider the opinions of state agency physicians, stating in pertinent part:

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

SSR 96-6p, 1996 WL 374180, *2 (Jul. 2, 1996).

The ALJ concluded that Stewart could perform sedentary work based on the following RFC finding:

---

[5]SSR 96-6p is titled: Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence. 1996 WL 374180.

> The claimant retains the residual functional capacity to do a range of sedentary work. Specifically, she can lift, carry, push or pull a maximum of 10 pounds, can stand and/or walk for 2 hours, and can sit for 6 hours in an 8-hour workday with normal breaks. She is limited to simple, routine, low-stress tasks that do not take place in public. She is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

(Tr. 25.) The ALJ based this finding on two state agency reviewing physicians.[6] The first physical RFC assessment, conducted in September 2004, concluded that Stewart could lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently with no pushing or pulling restrictions. (Tr. 210-217.) The second assessment, conducted in February 2005, concluded that Stewart could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently with no pushing or pulling restrictions. The ALJ's RFC finding includes greater restrictions than the state agency physicians. Given that the ALJ properly rejected Dr. Esterle's more limiting RFC as being contrary to the objective medical evidence, the Court finds no error in the RFC assessment.

**Substantial Medical Evidence**

Stewart argues that the ALJ erred by failing to consider substantial medical evidence in the record.[7] (Doc. No. 13 at 4-5.) The Commissioner contends the ALJ's decision was supported by substantial evidence, both as to Stewart's physical and mental impairments.

An ALJ "need not discuss all evidence presented ... [though] she must explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (finding it was not error to ignore evidence that was neither significant nor probative); *accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988) (A reviewing

---

[6] Both state agency reviewing physicians' names are illegible and not found elsewhere in the record.

[7] Specifically, Stewart identifies numerous items she claims that the ALJ ignored, including a 2003 diagnosis of ankylosing spondylitis by Dr. Swanson (Tr. 138-139), an examination on January 27, 2006, by Nurse Karen Radtke, revealing tenderness around the thoracic areas (Tr. 249-251), and a diagnosis of lumbar spondylosis on June 16, 2003, by Claire Joseph, M.D. (Tr. 140-141.) Stewart also argues that the ALJ ignored "repeated episodes of decompensation" relating to elevated sedimentation rates. (Doc. No. 13 at 4-5.)

court "do[es] not require a written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.")

Upon reviewing the record, comprised of fourteen medical providers, the ALJ concluded:

> Based on the evidence, I find that Ms. Stewart's severe impairments could reasonably be expected to produce some of the pain and psychological manifestations that she alleges. However, the findings on examination do not indicate an impairment or combination of impairments of such severity as to reasonably be expected to produce severe and disabling pain or life altering psychological symptoms that she alleges. She had multiple laboratory and diagnostic tests which failed to reveal significant pathology (Exhibit 7F, 46, 50-55, 58, 67-68; 86.) She was seen various times in the emergency room with chest pain; however, cardiac evaluation was negative (Exhibit 6, 3-8; 7F, 48-50; 11F, 17). Moreover, her physical examinations were inconsistent with the level of pain that she alleged.

(Tr. 30-31.) The ALJ properly articulated his reasons, based upon substantial evidence, for his conclusion that Stewart's severe impairments do not indicate limitations producing disabling pain.

### Stewart's Credibility

Stewart next argues that the ALJ did not conduct a proper credibility analysis. The Commissioner contends that the ALJ clearly explained the basis for his credibility finding, and the decision is supported by substantial evidence. As the ALJ's decision discusses Stewart's credibility and fibromyalgia together, the Court will also analyze them at the same time.

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Commissioner must examine whether (2)(a) the objective medical evidence confirms the alleged severity of pain, *or* (2)(b) whether the

objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Here, the ALJ accepted that Stewart suffered from fibromyalgia, a severe impairment. (Tr. 23.) Furthermore, the ALJ found that "Stewart's medically determinable impairments could reasonably be expected to cause the alleged symptoms" – namely pain. (Tr. 26.)

In contrast to most other medical impairments, it is difficult to find corroborative medical evidence in fibromyalgia cases.

> Fibromyalgia, also referred to as fibrositis, is a medical condition marked by "chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005). We note also that ours is not the only circuit to recognize the medical diagnosis of fibromyalgia as well as the difficulties associated with this diagnosis and the treatment for this condition. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (noting that "a growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("'Because proving the disease is difficult . . ., fibromyalgia presents a conundrum for insurers and courts evaluating disability claims.'") (*quoting Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999)).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3. (6th Cir. 2007); *see also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 915 (3rd Cir. 2003). Therefore, objective medical evidence corroborating allegations of pain will most likely be minimal, resulting in even greater emphasis on the credibility of a claimant's subjective allegations regarding the severity of her pain. *Rogers*, 486 F.3d at 243; *Preston*, 854 F.2d at 820; *see also Sarchet v. Chater*, 78 F.3d 305, 306-307 (7th Cir. 1996).

Nonetheless, a diagnosis of fibromyalgia does not automatically entitle Stewart to disability benefits. *See Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008). In *Vance*, there was evidence that the claimant "had no joint deformities or swelling; no nodules;

11

no tenderness, redness or warmth; a normal range of motion; normal strength; normal sensation; and no evidence of physical limitation." *Vance* at 805.  The *Vance* Court concluded that there was "substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving or, at worst, stable." *Id* at 806.

Here, the ALJ considered Stewart's allegations of disabling fibromyalgia in light of her daily activities, her testimony and appearance at the hearing, and the medical evidence in the record.  The ALJ discussed Stewart's fibromyalgia determining that, based on her treating physicians' diagnoses, it did not cause disabling pain to restrict her from work activities:

> Dr. Hitt, who treated Ms. Stewart for several years, indicated in January 2006 that she had intermittent fibromyalgia.  However, his examination did not reveal restriction in movement, extreme pain or functional deficits.  Additionally, Ms. Radtke saw Ms. Stewart several times and indicated that she was not taking medication for fibromyalgia and she was noncompliant with other medications (Exhibit 7F, 9-13).  Considering her testimony and the level of pain Ms. Stewart alleges, failure to take medication for relief of her pain is contradictory and diminishes her credibility regarding the intensity and limiting effects that she purports.
>
> While her physicians did not reject a diagnosis of fibromyalgia, their examinations did not demonstrate the severe limitations and pain she alleges.  Furthermore, they did not restrict her from engaging in activities related to work.  In fact, Dr. Klenske indicated that she did not believe Ms. Stewart met the criteria for disability (Exhibit 1F, 7), and Dr. Lowell expressed concern that her complaints were psychosomatic (Exhibit 10F, 61).  Both were treating physicians and I give their opinions substantial weight because they considered Ms. Stewart's physical complaints in addition to diagnostic results and physical examinations.

(Tr. 30.)

Nonetheless, the Court must address Stewart's credibility as objective medical evidence corroborating allegations of pain in fibromyalgia cases will most likely be minimal, resulting in even greater emphasis on the credibility of a claimant's subjective allegations regarding the severity of her pain.  The credibility determination in fibromyalgia cases is of "paramount importance" because its symptoms are entirely subjective.  *See, e.g., Wines v. Comm'r of Soc. Sec.*, 268 F.Supp2d 954, 960 (N.D. Ohio 2003).

Here, the ALJ found that Stewart's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with her treating physician's findings.  (Tr. 30.)  Credibility determinations regarding a claimant's

subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p. Beyond medical evidence, there are seven factors that the ALJ should consider.[8] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp.2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

In the case at bar, the ALJ was aware of his responsibility to conduct a credibility analysis. (Tr. 25-26.) He found that Stewart's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. (Tr. 30-31.) After thoroughly analyzing the medical record, the ALJ concluded as follows:

---

[8] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individualtakes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 375 F. Supp.2d at 732 .

> Ms. Stewart testified that she worked part-time as a nursing assistant and as a resident assistant. She testified that she is unable to work due to extreme pain, stiffness, weakness, tiredness, and panic attacks. She stated that her ankle and foot hurt so bad at times that she limps. She testified that she has severe pain and stiffness in her spine, neck, and fingers. Ms. Stewart testified that there is "no way" that she could work eight hours daily for five days per week. She stated that she takes a nap during the day if possible and she has to base her activities around napping. She testified that she dresses every day, but she has to take a nap. She testified that once she did not take a nap and she "conked" out by 6 p.m.
>
> Ms. Stewart testified that she does not know what causes her panic attacks, but she indicated that they occur less frequently. She testified that she was on medication for a short period of time for anxiety, but it made her weak and tired.
>
> Ms. Stewart testified that she lives with her husband and two children. She stated that her husband takes her shopping, but that there were times that she picked her son up alone. She testified that, when she walks, she tries to take someone with her. She cooks light meals and her husband does the vacuuming. She does dishes, but her husband does the yard work and lifts all the groceries.
>
> After considering the evidence, I find that Ms. Stewart's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> Ms. Stewart's medical history is significant for hypothyroidism which responded to treatment. However, her noncompliance with medication is also well documented throughout the case record.
>
> \* \* \*
>
> Based on the evidence, I find that Ms. Stewart's severe impairments could reasonably be expected to produce some of the pain and psychological manifestations that she alleges. However, the findings on examination do not indicate an impairment or combination of impairments of such severity as to reasonably be expected to produce severe and disabling pain or life altering psychological symptoms that she alleges. She had multiple laboratory and diagnostic tests which failed to reveal significant pathology (Exhibit 7F, 46, 50-55, 58, 67-68; 86). She was seen various times in the emergency room with chest pain; however, cardiac evaluation was negative (Exhibit 6, 3-8; 7F, 48-50; 11F, 17). Moreover, her physical examinations were inconsistent with the level of pain that she alleged.

(Tr 26, 30-31.) The ALJ noted that Stewart "drives, cares for children who require constant attention and participates in household chores. She sat through numerous examinations and there was never an indication that she had difficulty sitting for long periods." (Tr. 30.) The ALJ properly considered the treating physicians' opinions that Stewart's fibromyalgia did not restrict her from work activities. Moreover, there is substantial evidence that Stewart was not compliant with her medications. The ALJ found this to be contradictory to Stewart's statements regarding

the intensity and limiting effects of her purported pain.

While Stewart may have the necessary objective medical conditions to support her claim, the issue is the severity of her symptoms. Here, the ALJ properly weighed the evidence to determine that Stewart was not credible with respect to the severity of her symptoms. Unlike in *Rogers* where claimant's fibromyalgia symptoms progressively worsened, the record indicates that Stewart was noncompliant with her medication, and that upon physical examinations, the pain level alleged was not corroborated by observation. For example, as the ALJ notes, Dr. Klenske documented that she "moved easily and comfortably between the examination table and chair. Her gait was normal and her joints were without deformity, effusion or tenderness. Additionally, tender points of fibromyalgia were not identified during the visit." (Tr. 27.) Moreover, Richard Swanson, M.D., who examined Stewart on September 9, 2003, noted in a letter to Dr. Klenske that "[Stewart] has a multiplicity of other problems, which I cannot explain, but I do not believe that she satisfies any criteria for fibromyalgia. In fact, I think fibromyalgia is probably a very poor term for this patient." (Tr. 131.) The ALJ further noted that another treating doctor, Janis Lowell, M.D., concluded that the examinations of Stewart did not reveal significant physical limitations or pathology indicative of an acute disorder. (Tr. 27.)

The ALJ's consideration of the veracity of Stewart's claims and her credibility was based on a thorough review of the record and was substantially supported by evidence. *See Vance,* 260 Fed. Appx. 806; *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 713 (6th Cir. 1988) ("This court will not disturb the ALJ's credibility determinations on such factual matters.")

**Listing Requirement**

Stewart also argues that the ALJ erred in not finding a "12.01 Listing for a Muskatelatal [sic] Disorder."[9]

Regarding Listing 1.01 (Category of Impairments, Musculoskeletal), the ALJ reviewed the medical evidence and concluded that "no treating or examining physician indicated findings that would satisfy the severity requirements of any listed impairment." Tr. 24. The ALJ noted

---

[9]Listing 12.01 is for Category of Impairments - Mental.

15

that the State Agency medical consultants reached the same conclusion. *Id.*

Assuming *arguendo* that Stewart is arguing the ALJ did not properly analyze the mental listing requirements, the ALJ concluded that Stewart's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 [Anxiety-related Disorders], 12.07 [Somatoform Disorders], or 12.08 [Personality Disorders]. The ALJ found that Stewart has only moderate restrictions in all three categories – activities of daily living, social functioning, and concentration, persistence and pace. (Tr. 24.) He noted that Stewart has experienced one to two episodes of decompensation. *Id.* The ALJ then concluded: "Because Ms. Stewart's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the "paragraph B" criteria are not satisfied."[10] *Id.* The ALJ's finding that none of Stewart's severe impairments, singularly or in combination, met or equaled a Listed Impairment was supported by substantial evidence.

**Findings of Dr. Gumidyala, M.D., and Frederick Leidal, Psy.D.**

Stewart also contends the ALJ did not resolve conflicting evidence regarding two different Global Assessment of Functioning ("GAF") scores. In 2003, Eshwar Gumidyala, M.D., after a psychiatric consultation, noted Stewart's GAF to be 50. (Tr. 27.) In 2007, Frederick Leidal, Psy.D., performed a state psychological consultation and assessed a GAF score of 65. (Tr. 29.)

While the ALJ is required to consider all the evidence, the ALJ is not required to address every piece of evidence in reaching his decision. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006); *Carroll v. Astrue,* 2010 WL 2643420, **9 -10, Case No. 1:09cv1232 (N.D. Ohio, Jul. 1, 2010). Furthermore, the Sixth Circuit has noted that the Commissioner "has declined to endorse the [GAF] score for use in Social Security and SSI disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorder listings." *Morgan v. Comm'r of Soc. Sec.*, 2010 WL

---

[10]The "C" criteria for Listing 12.06 states: "Resulting in complete inability to function independently outside the area of one's home."

16

3522281, *8 (E.D. Mich. Aug. 13, 2010); *see also Hickle v. Astrue*, 2008 WL 305013, *3 (E.D.Tenn. 2008), *quoting, DeBoard v. Comm. of Soc. Sec.*, 211 Fed. Appx. 411 (6th Cir. 2006), *quoting* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000) (internal quotation marks omitted). "The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning." *Morgan* at *8; *Hickle*, at *3, *quoting Kennedy v. Astrue*, 2007 WL 2669153, *5 (6th Cir. 2007).

The ALJ was not required to resolve the conflict in a GAF score from 2003 and one from 2007.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be affirmed and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: November 4, 2010

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**